**UNITED ENERGY OWNERS COMMITTEE, INC., et al., Plaintiffs–Appellants,**

**and**

**Robert T. Gilleran, Appellant,**

**v.**

**UNITED STATES ENERGY MANAGEMENT SYSTEMS, INC., et al., Defendants–Appellees.**

**Nos. 86–6050, 86–6404.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1987.

Decided Jan. 8, 1988.

As Amended March 10, 1988.

Robert T. Gilleran, Los Angeles, Cal., for plaintiffs-appellants.

Steven P. Krakowsky, Wolfe & Linden, Frank P. Morse and Karen M. Durfee, Sandler, Rolnick & Morse, H. Steven Schiffres, Rosoff, Schiffres & Barta, Los Angeles, Cal., Francis Schwartz, Beverly Hills, Cal., for defendants-appellees.

Jose Chavez, Orange, Cal., pro se.

Before NELSON, HALL and THOMPSON, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

I.

In No. 86–6050, plaintiffs appeal the dismissal of their second amended complaint which alleges, as the sole basis for federal jurisdiction, two causes of action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982). On May 19, 1986, the district court entered an order dismissing these claims for plaintiffs' supposed failure to allege properly two elements of a RICO cause of action: (1) a "pattern of racketeering activity" and (2) an "enterprise."

Plaintiffs also appeal dismissal of their pendent state law claims and the vacation of certain writs of attachment. The district court dismissed the state law claims and vacated the writs of attachment because it found that it had no independent basis for jurisdiction over these matters after it had dismissed the RICO claims.

The district court had jurisdiction over the complaint pursuant to 18 U.S.C. § 1964(c) and the doctrine of pendent jurisdiction. We have jurisdiction over the

judgment of dismissal pursuant to 28 U.S. C. § 1291. *See California v. Harvier,* 700 F.2d 1217, 1218 (9th Cir.) (dismissal before entry of final judgment appealable where it is clear that district court did not think complaint could be saved by any amendment), *cert. denied,* 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983).

In No. 86–6404, plaintiffs and plaintiffs' counsel appeal the district court's imposition of sanctions in the amount of $9,465 pursuant to Fed.R.Civ.P. 11 for plaintiffs' failure to act in a timely and diligent manner in releasing the writs of attachment after dismissal of the above claims. On July 29, 1986, while the plaintiffs' appeal from the judgment of dismissal was pending, the district court ordered the plaintiffs to pay these sanctions.

The district court had jurisdiction to impose sanctions under the reasoning of our decision in *Masalosalo v. Stonewall Ins. Co.,* 718 F.2d 955, 956–57 (9th Cir.1983) (district court retains jurisdiction to award attorney's fees after filing of notice of appeal from decision on merits). We also have jurisdiction over the district court's imposition of sanctions under our ruling in *Masalosalo,* 718 F.2d at 957 ("If a district court decides a fee issue early in the course of a pending appeal on the merits, and the fee order is appealed, the appeals may be consolidated."). *Cf. Kordich v. Marine Clerks Ass'n,* 715 F.2d 1392, 1393 (9th Cir. 1983) (imposition of sanctions against party and attorney is appealable after final judgment).

Because the district court's decision is in conflict with our recent decisions in the RICO arena,[1] we reverse in No. 86–6050. Because Rule 11 does not provide a basis for the district court's imposition of sanctions, we also reverse in No. 86–6404.

## II.

On August 21, 1985, the plaintiffs filed a complaint that included two claims against the defendants for relief pursuant to RICO section 1964(c).[2] The defendants did not file a responsive pleading; instead, they filed motions to dismiss or for a more definite statement. After the district court granted defendants' motion for a more definite statement, the plaintiffs filed their first amended complaint. The district court then decided that it must dismiss the first amended complaint because the plaintiffs had failed to comply with our decision in *Rae v. Union Bank,* 725 F.2d 478 (9th Cir.1984), which held that the RICO defendant and the RICO enterprise cannot be the same entity under RICO section 1962(c). *Id.* at 480–81. The district court therefore dismissed the first amended complaint with leave to amend. After the plaintiffs filed their second amended complaint, the district court granted defendants' subsequent motion to dismiss for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). Plaintiffs timely appealed.

The plaintiffs are Sunbelt Energy Corporation ("Sunbelt") (which is in the business of marketing solar energy systems), and promoters and purchasers (appearing individually or through the United Energy Owners Committee, Inc.) of the Sunbelt systems.[3] The defendants are United

---

**1.** *See Sun Sav. & Loan Ass'n v. Dierdorff,* 825 F.2d 187 (9th Cir.1987); *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466 (9th Cir.1987); *Schreiber Distributing Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393 (9th Cir.1986); *see also Wilcox v. First Interstate Bank,* 815 F.2d 522 (9th Cir.1987); *United States v. Benny,* 786 F.2d 1410 (9th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986); *cf. Rae v. Union Bank,* 725 F.2d 478 (9th Cir.1984).

**2.** Section 1964(c) provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropri-

ate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

**3.** Specifically, plaintiffs are the United Energy Owners Committee, Inc. (a nonprofit corporation that represents a group of plaintiffs allegedly defrauded by the defendants), Melvin Alkema, E. Delree Alkema, Dixie W. Banker, Murray Brooks, C.L. Bruner, Jeri E. Bruner, Douglas E. Crawford, Doris E. Crawford, Warren T. Davey, Philip Gardner, Robert H. Gassner, Benny J. Holder, Diane Holder, Emil Landefeld, Morris Rozner, Natalie Rozner, Thomas E. Sawyer, Sunbelt Energy Corporation, Frederick Weiner, James H. Wright, Jr., and Linda Wright.

States Energy Management Systems, Inc. ("U.S. Energy") (which contracted to locate, install, and maintain solar energy systems on behalf of Sunbelt), and certain individuals and entities affiliated with U.S. Energy, some of whom are subcontractors of U.S. Energy.[4] In their second amended complaint, the plaintiffs allege that: (1) U.S. Energy and certain of the other defendants used falsified information about the business expertise of U.S. Energy to induce Sunbelt to enter into its contract with U.S. Energy; (2) U.S. Energy and the other defendants at no time had the intention or ability to perform or cause U.S. Energy to perform any of its obligations under the contract, but instead intended fraudulently to transfer funds paid to U.S. Energy to the other defendants; (3) the defendant subcontractors at no time had the intention or ability to perform their obligations under their subcontracts, and were also participants in the scheme to siphon money out of U.S. Energy; (4) certain of the defendants participated in a sham sale and purchase of U.S. Energy, a transaction also designed to transfer money fraudulently from U.S. Energy to other of the defendants; (5) certain of the defendants fraudulently misrepresented that progress was being made on the installation of the systems and that the work they had contracted to do would soon be complete, which induced the plaintiffs to make further payments to U.S. Energy; (6) the defendants engaged in these activities from May of 1984 through August of 1985; and (7) the defendants made interstate telephone calls and used interstate mail and wire facilities in furtherance of their scheme. The plaintiffs also allege that U.S. Energy defrauded 2,000 investors who purchased or leased their systems through entities other than Sunbelt in addition to the 274 Sunbelt investors.

The plaintiffs allege that the defendants' activities constitute predicate acts of mail and wire fraud in furtherance of a fraudulent solar energy tax shelter scheme. The plaintiffs claim that the defendants injured them by violating (1) RICO section 1962(c) by participating in the conduct of the affairs of enterprises through a pattern of racketeering activity,[5] and (2) RICO section 1962(a) by using or investing the income or proceeds of the racketeering activity to acquire interests in and to establish and operate other businesses which are engaged in interstate commerce.[6] The plaintiffs also claim that the defendants engaged in a conspiracy in violation of RICO section 1962(d) by their violation of sections 1962(a) and (c).[7]

The defendants' motion for sanctions alleged: (1) that the plaintiffs' pleadings were not warranted by existing law or a good faith attempt to extend existing law (citing Rule 11); (2) that plaintiffs acted in bad faith in connection with pleading and pretrial discovery matters (citing Rule 37); and (3) that plaintiffs "fail[ed] to respond to counsel for defendants' request that plaintiffs promptly issue instructions to the United States Marshal directing the Marshal to release funds held pursuant to writ of attachment following [the district court's] order dismissing the action and setting aside the Writs of Attachment." The defendants cited no rule or authority

---

**4.** Specifically, defendants are United States Energy Management Systems, Inc., Donald Fleming *aka* Donald Earl Fleming, Cheri Fleming *aka* Cheryl Fleming *aka* Sheri Fleming *aka* Cheryl Carharh *aka* Cheryl Carhartt, Sundance Tanning Center, Inc., Palm Tree, Suncher, Inc., Suntime California Enterprises, Inc., Robert Ruffley, Combined Energy Control Systems, Inc., Jose Chavez, Technical Development Systems, Inc., Gabriel Jaurequi, Energy Group, Inc., and Bobi Jo Fredrick.

**5.** Section 1962(c) makes unlawful the direct or indirect conducting of or participation in a RICO "enterprise's affairs through a pattern of racketeering activity" by any person employed by or associated with any enterprise engaged in interstate commerce.

**6.** Section 1962(a) makes unlawful the direct or indirect use or investment (in acquisition of any interest in an interstate business) of any income or proceeds derived from the enterprise's pattern of racketeering activity by any "principal" in the enterprise who has received any such income.

**7.** Section 1962(d) makes it unlawful for any person to conspire to violate section 1962(a), (b), or (c).

supporting their request for sanctions in connection with the writs of attachment.

The district court held that sanctions were not available for the matters covered by Rules 11 and 37. Nevertheless, the district court granted in part the "Defendants' Motion for the Imposition of Sanctions Pursuant to Federal Rule of Civil Procedure 11" for the plaintiffs' failure "to act in a timely and diligent manner in releasing the Writs of Attachment." The plaintiffs and plaintiffs' counsel again timely appealed.

### III.

We review de novo a grant of a motion to dismiss. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987); *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir.1986). "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief." *Rae*, 725 F.2d at 479; *see Sun Savings*, 825 F.2d at 191 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). We must construe all of the plaintiffs' allegations in their favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Sun Savings*, 825 F.2d at 191.

### IV.

The district court held that plaintiffs had properly alleged multiple "predicate acts" of "racketeering activity," as defined by RICO section 1961(1),[8] but that these acts failed to satisfy RICO's requirement of a "pattern of racketeering activity."[9] The district court relied on a definition of "pattern" which excludes predicate acts within one and the same "criminal episode." *Citing Allington v. Carpenter*, 619 F.Supp.

474, 477–78 (C.D.Cal.1985). The *Allington* court interpreted language in a footnote in the Supreme Court's opinion in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), as requiring more than one criminal episode in order to satisfy the "factor of 'continuity plus relationship' which combines to produce a pattern." *Allington*, 619 F.Supp. at 477. Since the district court found that plaintiffs had alleged acts in only one scheme to defraud, i.e., one criminal episode, it dismissed the plaintiffs' second amended complaint for failure to plead the "continuity" requisite to the "pattern" element.

We recently rejected *Allington*'s "multiple criminal episode" theory of pleading a pattern of racketeering activity under RICO in two cases. In *Sun Savings*, we held that "it is not necessary to show more than one fraudulent scheme or criminal episode to establish a pattern under *Sedima*." 825 F.2d at 193. Rather, plaintiffs need only allege predicate acts which are not "isolated or sporadic." *Id.* at 193–94. The test is "whether the acts posed a threat of continuing activity." *Id.* at 194. In *California Architectural Bldg. Prods. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir.1987), we recognized that RICO's continuity requirement is not satisfied if plaintiffs have merely alleged "a single fraud perpetrated on a single victim." 818 F.2d at 1469 (citing *Schreiber*, 806 F.2d at 1399). Nevertheless, we held that a plaintiff properly pleads a RICO pattern where it alleges multiple predicate acts against multiple victims over a significant period of time (five months) since that clearly satisfies RICO's requirement of "two or more acts of racketeering activity." 818 F.2d at 1469 & n. 1 (adopting an approach interpreting RICO's pattern requirement

---

**8.** Section 1961(1) defines "racketeering activity" as any of certain "chargeable" (under specified state criminal laws) or "indictable" (under specified federal criminal provisions) acts. The definition includes the "predicate acts" alleged in the plaintiffs' complaint: mail fraud (under 18 U.S.C. § 1341) and wire fraud (under 18 U.S.C. § 1343). *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481–82 & n. 3, 105 S.Ct. 3275, 3277–78 & n. 3, 87 L.Ed.2d 346 (1985).

**9.** Section 1961(5) defines a "pattern of racketeering activity" as requiring "at least two [predicate] acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity."

"broadly and literally") (citing with approval *United States v. Ianniello*, 808 F.2d 184, 192 (2d Cir.1986) ("[W]hen a person commits at least two acts that have the common purpose of furthering a continuing criminal enterprise with which that person is associated, the elements of relatedness and continuity ... are satisfied."), *cert. denied*, —— U.S. ——, 107 S.Ct. 3229–30, 97 L.Ed.2d 736 (1987); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986) (rejecting multiple criminal episode requirement)). The *Sun Savings* and *Franciscan Ceramics* decisions harmonize with the "broad" and "liberal" reading of RICO which the Supreme Court applied in *Sedima*. 473 U.S. at 497–98, 105 S.Ct. at 3286–87.

■ In order to dismiss a RICO claim, a district court thus must determine that the plaintiffs have failed to allege two or more RICO predicate acts, occurring over a significant period of time, evidencing a threat of continuing activity. *See Sun Savings*, 825 F.2d at 194; *Franciscan Ceramics*, 818 F.2d at 1469; *Schreiber*, 806 F.2d at 1398–1400.[10] Unrelated or discontinuous predicate acts will not suffice. *Medallion Television Enterprises, Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363–64 (9th Cir.1987) (RICO does not cover a single alleged fraudulent inducement to enter a contract affecting a single victim and terminating on a date certain); *Sun Savings*, 825 F.2d at 191 (RICO does not cover "isolated" or "sporadic" acts); *Franciscan Ceramics*, 818 F.2d at 1469 (RICO does not cover "a single fraud perpetrated on a single victim"); *Schreiber*, 806 F.2d at 1399 (RICO does not cover "the fraudulent diversion of a single shipment of ... products"). Nor will " 'two isolated acts of racketeering activity ... constitute a pattern.' " *Schreiber*, 806 F.2d at 1399 (quoting *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14).

But multiple criminal episodes or fraudulent schemes are not necessary.

■ In dismissing plaintiffs' second amended complaint, the district court erroneously relied on the now-rejected "multiple criminal episode" theory for pleading a pattern of racketeering activity. We conclude that the plaintiffs' allegations of multiple fraudulent acts involving multiple victims over more than one year are sufficiently related and pose a sufficient threat of continuing activity to satisfy the rules laid down in *Medallion Television Enterprises, Sun Savings, Franciscan Ceramics*, and *Schreiber*. Indeed, the district court held that the plaintiffs' failure in their pattern element pleading was a failure to allege activity in more than one criminal episode, *not* a failure to allege the requisite number or type of predicate acts. Its judgment that the plaintiffs failed to plead properly a "pattern of racketeering activity" therefore is reversed.

## V.

The district court also dismissed the plaintiffs' claims under RICO sections 1962(a), (c), and (d) because it held that the plaintiffs failed to allege a proper "enterprise," as defined by RICO section 1961(4).[11] The sole reason the district court gave for its ruling was that the plaintiffs had failed to allege an enterprise with an " 'existence prior to and separate from' the pattern of racketeering activity" that is the object of this lawsuit. We address first whether the district court properly dismissed the claims under section 1962(c); we then address the section 1962(a) and (d) claims.

### A.

The Supreme Court held in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), that under

---

**10.** For a general discussion of the RICO pleading requirements, including the specificity required in allegations of fraud, see *Schreiber*, 806 F.2d at 1396–1401; *see also Sigmond v. Brown*, 828 F.2d 8, 9 (9th Cir.1987) (mail fraud requires proof of loss of money or tangible property rights) (citing *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 2881–82, 97 L.Ed.2d 292 (1987)). For a complete discussion of RICO in the corporate context, see 1 K. Brickey, *Corpo-*

*rate Criminal Liability* §§ 7:01–7:30 (1984 & Supp.1987).

**11.** Section 1961(4) defines a RICO "enterprise" as follows:

"enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

section 1962(c) a RICO enterprise must be "an entity separate and apart from the pattern of [racketeering] activity in which it engages." *Id.* at 583, 101 S.Ct. at 2529. The "pattern of racketeering activity is ... a series of criminal acts," while an enterprise may be "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* Proof of the enterprise may be established by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit," while proof of the racketeering activity is established by "evidence of the requisite number of acts of racketeering committed by the participants in the enterprise." *Id.* Therefore, although the enterprise must be separate from the activity alleged, the persons involved and the conduct at issue will necessarily overlap. Thus, in *Turkette*, the Court recognized that while an enterprise must be separate from the illegal activity, *proof* of these two elements may "coalesce",[12] even though "proof of one does not necessarily establish the other." *Id.*

The district court held that the enterprises alleged in the plaintiffs' complaint had no " 'existence prior to or separate from' the pattern of racketeering activity" involved. *Quoting Allington*, 619 F.Supp. at 479.[13] The plaintiffs contend that one of their members, Sunbelt (a corporation which allegedly was manipulated by the defendants in carrying out their fraudulent activity), is a proper RICO enterprise with an existence separate from the alleged racketeering activity. They also contend that the business venture comprised of Sunbelt, the other plaintiffs, and all of the defendants is a proper RICO enterprise. The defendants contend that the plaintiffs cannot include themselves in a RICO enterprise and that both of the alleged enterprises were indistinct from the pattern of racketeering activity.

■ First, the plaintiffs are free to allege that they or one of their members is a RICO enterprise or part of a RICO enterprise. *Sun Savings*, 825 F.2d at 194–95 & n. 6. RICO section 1962(c) requires proof of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285 (footnote omitted). This language does not prohibit the plaintiffs from including themselves in a legitimate, albeit infiltrated, enterprise and has not been interpreted to limit RICO enterprises to those persons engaged in the illegal conduct. *See id.* at 483–84, 497–98, 499–500, 105 S.Ct. at 3278–79, 3286–87, 3287–3288; *Sun Savings*, 825 F.2d at 194 n. 6. What is important is that the plaintiffs must allege that "the *defendants conducted* the enterprise through a pattern of racketeering activity." *Sedima*, 473 U.S. at 500, 105 S.Ct. at 3287 (emphasis added). The plaintiffs have done so in this case. Therefore, the plaintiffs properly pled at least one RICO enterprise.

■ Second, the plaintiffs have alleged facts sufficient to state a claim against the defendants for infiltration of an "association in fact" type enterprise.[14] *See, e.g., Turkette*, 452 U.S. at 591, 101 S.Ct. at 2532

---

12. *See United States v. DeRosa*, 670 F.2d 889, 895–96 (9th Cir.), *cert. denied*, 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (1982); *United States v. Bagnariol*, 665 F.2d 877, 890–91 (9th Cir. 1981), *cert. denied*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). *See generally United States v. Qaoud*, 777 F.2d 1105, 1115–16 (6th Cir.1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 899 (1986) (collecting cases) ("Although 'enterprise' and 'pattern of racketeering activity' are separate elements, they may be proved by the same evidence.").

13. The *Allington* court correctly recognized that under *Turkette* every private plaintiff asserting a violation of RICO section 1962(c) must "plead an enterprise apart from the underlying pattern of racketeering activity." 619 F.Supp. at 479 (citing *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir.) (RICO enterprise must have "an 'ascertainable structure' distinct from that inherent in the conduct of a pattern of racketeering activity."), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982)).

14. *See Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527 (emphasis added):

There is no restriction upon the associations embraced by the definition [of enterprise in section 1961(4)]: an enterprise includes *any ... group of individuals associated in fact.*

(association of individuals organized exclusively for illegal activity covered by RICO); *United States v. Aimone,* 715 F.2d 822, 828 (3d Cir.1983) (group of individuals and corporation associated in fact), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 883 (1984); *United States v. Mazzei,* 700 F.2d 85, 91 (2d Cir.) (group of individuals, consisting of gamblers and basketball players, sharing common illegal purpose formed association in fact), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983); *United States v. Clemente,* 640 F.2d 1069, 1081 (2d Cir.) (group of individuals associated in fact to infiltrate and establish a pattern of racketeering activity within a legitimate business venture), *cert. denied,* 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981). This is true even if the infiltrated enterprise included some or all of the plaintiffs. *See Sedima,* 473 U.S. at 483–84, 499–500, 105 S.Ct. at 3278–79, 3287–3288.[15]

■ Third, the plaintiffs have alleged two enterprises which *were* separate from the racketeering activity: (1) Sunbelt and (2) the business venture entered into by Sunbelt, the other plaintiffs, and the defendants.

The circuit courts are split on the requirements for establishing a separate RICO enterprise after *Turkette.*

The Eighth Circuit has held that a RICO enterprise must have "an ascertainable structure [sic] distinct from that inherent in the conduct of a pattern of racketeering activity," *United States v. Bledsoe,* 674 F.2d 647, 665 (8th Cir.1982), *cert. denied,* 459 U.S. 1040 [103 S.Ct. 456, 74 L.Ed.2d 608] (1982), and the Third and Fourth Circuits also have endorsed the separate existence requirement. *See United States v. Riccobene,* 709 F.2d 214 (3d Cir.), *cert. denied,* 464 U.S. 849 [104 S.Ct. 157, 78 L.Ed.2d 145] (1983); *United States v. Tillett,* 763 F.2d 628 (4th Cir.

1985). On the other hand, the Second Circuit has upheld the application of RICO "to situations where the enterprise was, in effect, no more than the sum of the predicate racketeering acts." *United States v. Bagaric,* 706 F.2d 42, 55 (2d Cir.), *cert. denied,* 464 U.S. 840 [104 S.Ct. 134, 78 L.Ed.2d 128] (1983). The Eleventh Circuit has rejected the Eighth Circuit's position as well. *See United States v. Weinstein,* 762 F.2d 1522 (11th Cir.1985) [, *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986) ]. *Allington,* 619 F.Supp. at 479. *See generally* Weissman, *Enterprise: Relation to "Pattern" of Racketeering,* in RICO LAW DEVELOPMENTS: 1986, at 141–43 (RICO Law Reporter 1987). We need not decide which interpretation of *Turkette* is more appropriate, however, because the plaintiffs have sufficiently alleged the existence of two separate enterprises under either view.

Both of the alleged enterprises certainly fulfill the lenient requirements of the Second and Eleventh Circuits. In addition, even under the more stringent test of the Eighth Circuit, the plaintiffs' allegation that the corporate entity Sunbelt was an enterprise fulfills the requirement that the enterprise have an ascertainable structure apart from the racketeering activity. *Cf. Bennett v. Berg,* 685 F.2d 1053, 1060–61 (8th Cir.1982) ("Legal entities are garden-variety 'enterprises' which generally pose no problem of separateness from the predicate acts."), *adopted upon reh'g en banc,* 710 F.2d 1361 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).[16] Moreover, the plaintiffs have alleged that the defendants illegally conducted the affairs of the business venture which existed separately from the alleged racketeering activity and included Sunbelt (a corporate plaintiff), and U. S. Energy, Sundance Tanning Center,

---

**15.** RICO was designed to protect legitimate enterprises from infiltration by racketeers as well as the public from the operation of illegitimate enterprises. Indeed, "the primary purpose of RICO is to cope with the infiltration of legitimate businesses." *Turkette,* 452 U.S. at 591, 101 S.Ct. at 2533.

**16.** *See generally* Blakey, *The RICO Civil Fraud Action in Context: Reflections on* Bennett v. Berg, 58 Notre Dame L.Rev. 237, 290–300 & nn. 152–66, 325–26 & n. 185 (1982).

Inc., Suncher, Inc., Suntime California Enterprises, Inc., Combined Energy Control Systems, Inc., Technical Development Systems, Inc., and Energy Group, Inc. (all corporate defendants). Finally, since the conduct of at least one of these entities (Sunbelt) is alleged to include legal activity, the enterprise comprised of the whole was at least somewhat separate from the defendants' conducting of the racketeering activity within it.

### B.

■ In dismissing the complaint the district court failed to address the issue of whether, under RICO sections 1962(a) and (d), the enterprises must be separate from the racketeering activity. Because we hold that the enterprises were separate from the racketeering activity, we need not reach the issue. But the district court granted a motion to dismiss the plaintiffs' claims under sections 1962(a), (c), and (d) [17] in their first amended complaint because the plaintiffs failed to allege that the corporate defendants as "persons" defined by RICO section 1961(3) [18] were other than the "enterprises" defined by RICO section 1961(4).[19] Although this ruling was correct as to section 1962(c), it was incorrect as to sections 1962(a) and (d). Because the problem may arise in evaluating the merits of the plaintiffs' claims, we point out the correct rule in our circuit.

In *Schreiber*, we held that "where a corporation engages in racketeering activities and is the direct or indirect beneficiary of the pattern of racketeering activity, it can be both the 'person' and the 'enterprise' under section 1962(a)." 806 F.2d at 1398; *cf. Rae*, 725 F.2d at 481 (person and enterprise must be distinct under section 1962(c)). Plaintiffs apparently alleged that certain of the defendants as corporations were enterprises which violated sections 1962(a), (c), and (d). While their section

1962(c) claims are not helped by *Schreiber*, their other claims are. Since section 1962(d) makes unlawful conspiracies which violate sections 1962(a), (b) or (c), *Schreiber*'s rule applies to the plaintiffs' claims under section 1962(d) which allege conspiracies to violate section 1962(a), though not to those which allege a violation of section 1962(c). Therefore, under their section 1962(a) and (d) claims, plaintiffs have alleged enterprises that, even if they are the same as the persons involved as defendants, qualify as enterprises under *Schreiber*. See *Wilcox v. First Interstate Bank*, 815 F.2d 522, 529–30 (9th Cir.1987).[20]

### C.

The district court erred in holding that the plaintiffs failed to plead proper enterprises in their first and second amended complaints. Its judgment therefore is reversed.

### VI.

■ We review orders imposing sanctions pursuant to Rule 11 as follows: (1) factual determinations are reviewed for clear error; (2) the legal conclusion that the facts establish a violation is reviewed de novo; and (3) the appropriateness of the sanction imposed is reviewed for an abuse of discretion. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986). Here the legal conclusion that the facts establish a violation is at issue.

Rule 11 does not provide for sanctions for the misconduct sanctioned by the district court in this case. Rule 11 provides for sanctions against an attorney who signs a pleading, motion, or other paper in violation of the standards set forth in the Rule. See, e.g., *Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450, 452–53 & n. 3 (9th Cir.1987). Plaintiffs' counsel was not sanctioned for any activity proscribed by Rule 11; plaintiffs' counsel did not sign any inappropriate paper with respect to the

---

**17.** See notes 5–7 *supra*.

**18.** Section 1961(3) defines "persons" as including "any individual or entity capable of holding a legal or beneficial interest in property."

**19.** See note 11 *supra*.

**20.** See generally K. Brickey, *supra* note 10, at § 7:03; Blakey, *supra* note 16, at 286–325.

writs of attachment. *Cf. Hurd v. Ralphs Grocery Co.*, 824 F.2d 806, 808–11 (9th Cir.1987).

The defendants cited no authority other than Rule 11 to support their request that the district court impose sanctions for plaintiffs' failure to instruct the United States Marshal regarding the writs; in fact, they cited no authority for the proposition that the plaintiffs were in fact required to so instruct the Marshal. Instead, they appear to have simply relied on Rule 11 as a general basis for sanctions. "Rule 11 is not a panacea intended to remedy all manner of attorney misconduct...." *Zaldivar*, 780 F.2d at 829–30. While there may be authority [21] supporting the awarding of sanctions for counsel's alleged misconduct, the district court erroneously relied on Rule 11. The district court asserted no other basis for the sanctions and therefore applied an incorrect legal standard. We therefore reverse the district court's imposition of sanctions.

### VII.

The plaintiffs' second amended complaint properly alleged both a RICO pattern of racketeering activity and at least two RICO enterprises. We therefore reverse the district court's dismissal of that complaint in No. 86–6050. Because it improperly dismissed the plaintiffs' RICO claims, the district court should reexamine its dismissal of the pendent state law claims and its vacation of the writs of attachment. We therefore remand those decisions to the district court. *Cf. Sun Savings*, 825 F.2d at 189 n. 1.

Rule 11 does not apply to the plaintiffs' alleged failure to release the writs of attachment in a timely manner. Because the district court relied on an improper rule of law in awarding sanctions for the plaintiffs' alleged misconduct, we reverse in No. 86–6404.

REVERSED and REMANDED.

---

**21.** *E.g.* 28 U.S.C. § 1927; Fed.R.Civ.P. 70; *see Zaldivar*, 780 F.2d at 829–30 (discussing Rules 11, 26(g), 56(g), section 1927, and district court's inherent power to discipline attorney misconduct).