SEA–LAND SERVICE, INC., Plaintiff,

v.

ATLANTIC PACIFIC INTERNATIONAL, INC.; A & A Consolidators, Inc. Fleming Companies, Inc.; John Does 1–25, Defendants.

and

Fleming Companies, Inc., Defendant/Third–Party Plaintiff,

v.

Jack Borja and Heidi L. Borja, Third–Party Defendants,

and

Atlantic Pacific International, Inc., Defendant/Third–Party Plaintiff,

v.

Matson Navigation Services, Inc., a Hawaii corporation; Costco Wholesale Corporation, a Washington corporation; Wal–Mart Stores, Inc. dba Sam's Club, a Delaware corporation; TAG/ICIB Services, Inc., a Delaware corporation, Third–Party Defendants,

and

Sea–Land Service, Inc., Plaintiff/Fourth–Party Plaintiff,

v.

Jack Borja and Heidi L. Borja, Fourth–Party Defendants.

No. 98–00369 DAE.

United States District Court, D. Hawaii.

July 12, 1999.

---

Gregory W. Kugle, Damon Key Bocken Leong & Kupchak, Honolulu, HI, Deborah E. Barack, Carlsmith Ball Wichman Case & Ichiki, Honolulu, HI, for Sea–Land Service, Inc.

Timothy J. Hogan, Lynch Ichida Thompson & Kim, Honolulu, HI, for Atlantic Pacific International, Inc., A & A Consolidators, Inc.

Craig K. Shikuma, Kobayashi Sugita & Goda, Honolulu, HI, for Fleming Companies, Inc.

David C. Farmer, Ashford & Wriston, Honolulu, HI, Paul B. Shimomoto, Ashford & Wriston, Honolulu, HI, for Jack Borja, Heidi L. Borja.

Lisa W. Munger, Lindalee K. Farm, Goodsill Anderson Quinn & Stifel, Honolulu HI, for Costco Wholesale Corporation, Matson Navigation Company, Inc.

Bruce C. Bigelow, Case Bigelow & Lombardi, Honolulu, HI, for Wal–Mart Stores, Inc.

Kenneth A. Remson, Jones Day Reavis & Pogue, Los Angeles, CA, Jeffrey S. Portnoy, Cades Schutte Fleming & Wright, Honolulu, HI, for TAG/ICIB Services, Inc.

*ORDER GRANTING TAG/ICIB SERVICES, INC.'S MOTION TO DISMISS ATLANTIC PACIFIC INTERNATIONAL, INC.'S AND A & A CONSOLIDATORS, INC.'S RICO CLAIM IN ITS FIRST AMENDED THIRD–PARTY COMPLAINT*

DAVID ALAN EZRA, Chief Judge.

The court heard TAG/ICIB Services, Inc.'s Motion to Dismiss on May 18, 1999. Jeffrey S. Portnoy, Esq., and Jeffrey A. LeVee, Esq., appeared at the hearing on behalf of TAG/ICIB Services, Inc.; Timothy J. Hogan, Esq., appeared at the hearing on behalf of Atlantic Pacific International, Inc. and A & A Consolidators, Inc. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS TAG/ICIB Services, Inc.'s Motion to Dismiss Atlantic Pacific International, Inc.'s and A & A Consolidators, Inc.'s RICO Claim in its First Amended Third–Party Complaint.

## BACKGROUND

On May 7, 1998, Plaintiff Sea–Land Service, Inc. ("Sea–Land") filed a Complaint against Defendants Atlantic Pacific International, Inc. ("API"), A & A Consolidators, Inc. ("A & A"), and Fleming Companies, Inc. ("Fleming") (collectively "Defendants"), seeking to recover unpaid ocean freight charges. In response, API and A & A (hereinafter "API") asserted a counterclaim against Sea–Land, alleging (1) federal antitrust violations; (2) violation of the federal racketeering statute ("RICO"); (3) the existence of maritime liens on Sea–Land's vessels; (4) conversion of API's property; and (5) breach of contract.

In addition, API filed a Third–Party Complaint against Matson Navigation Company, Inc. ("Matson"), Costco Wholesale Corporation ("Costco"), Wal–Mart Stores, Inc. ("Wal–Mart"), and TAG/ICIB Services, Inc. ("TAG").[1] API's First

---

1. API dismissed all claims against Matson, Costco and Wal–Mart without prejudice.

Thus, only TAG remains a third-party defendant.

Amended Third–Party Complaint ("Complaint") alleges causes of action pursuant to the Sherman Act, 15 U.S.C. § 1 *et seq.*, the Clayton Act, 15 U.S.C. § 15(a), section 5 of the FTC Act, 15 U.S.C. § 45(a), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The instant motion is brought by TAG, seeking to dismiss the RICO allegations for failure to state a claim.

TAG is a Delaware corporation that inspects cargo to ensure tariff compliance. The Complaint alleges that TAG is also a racketeering enterprise, and that TAG has engaged in a pattern of racketeering activity. In support of its claim that TAG engaged in a pattern of racketeering activity, the Complaint alleges that in the course of performing its inspection services, TAG removed cargo from API's shipping containers in violation of 18 U.S.C. § 659, which prohibits theft from interstate shipments.

The Complaint alleges that during the last four years, such alleged thefts have resulted in damages of more than $600,-000. API alleges 20 specific violations of § 659 that occurred over an eight-month time period, resulting in total alleged damages of $13,937.20. Of these, four violations, occurring over a ten-week period, meet RICO's minimum threshold dollar amount of $1,000. API further alleges that the proceeds of TAG's racketeering activity were received by Sea–Land and Matson. In addition, the Complaint states that TAG engaged in a pattern of racketeering activity by committing theft and damaging cargo in violation of the Hobbs Act, 18 U.S.C. § 1951.

TAG moved to dismiss the RICO claim on February 10, 1999. At that time, a hearing was set for March 22, 1999. API filed its opposition on March 4, 1999, contending that API did not receive a copy of TAG's motion until that very day. API did not respond to the substance of TAG's motion; instead, API urged the court to deny the motion on the grounds that there was insufficient notice and that API would be unfairly prejudiced if the motion were granted. The following day, TAG's counsel wrote to API's counsel, acknowledging that there may have been a problem with the service, and pointing out that, because the hearing had been continued until May 18, 1999, API's opposition to the motion would be due eighteen days before the rescheduled hearing date. This letter requested, "If you disagree with this conclusion, please let me know immediately so that we can bring this to the court's attention for resolution." API did not respond.

Four days later, the court set a revised briefing schedule for all eight of the motions set for hearing on May 18, 1999. The court ordered that "[a]ll memoranda in opposition to the motions, which have not already been filed, are due by April 16, 1999," and reply briefs by April 30, 1999. API did not file a supplemental memorandum in opposition. TAG filed its reply on April 30, 1999. At the May 18, 1999 hearing, the court requested additional briefing from the parties. The court has received and considered both parties' submissions.

### STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989)) (further citations omitted). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Id.*

### DISCUSSION

■ API alleges that TAG has been stealing cargo from its interstate shipments during inspections and that TAG

should be held liable for these thefts under RICO. The elements of a RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The failure to establish any of these elements is fatal to a RICO claim. *See Rae v. Union Bank,* 725 F.2d 478, 480–81 (9th Cir.1984) (affirming Rule 12(b) dismissal of RICO claim where plaintiff failed to meet the "enterprise" requirement).

█ The court first examines whether API has adequately alleged a pattern of racketeering activity. RICO defines the term "pattern of racketeering activity" as requiring "at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Aside from the minimal requirement of showing two predicate acts existed, RICO nowhere addresses the meaning of the term "pattern" as used throughout the statute. In *H.J. Inc. v. Northwestern Bell Telephone Company,* the Supreme Court sought to develop a meaningful concept of that term. 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Drawing on dicta from a previous opinion in which the issue was considered, *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. 3275, the Supreme Court developed from RICO's legislative history a two-prong framework for analysis: "[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Northwestern Bell,* 492 U.S. at 239, 109 S.Ct. 2893. Thus, the determination of whether a RICO plaintiff is able to establish a pattern of racketeering activity necessarily entails an initial determination of whether the defendants committed two or more predicate acts within the meaning of the RICO statute and, if so, whether the predicate acts were related in a manner such that they created

a threat of continued unlawful activity, *Northwestern Bell,* 492 U.S. at 239–43, 109 S.Ct. 2893.

### 1. *Predicate Acts*

Congress has enumerated the predicate acts which may form a basis for a RICO claim in 18 U.S.C. § 1961(1). Of these, API relies on (a) the Hobbs Act, 18 U.S.C. § 1951 (relating to interference with commerce, robbery, or extortion), and (b) 18 U.S.C. § 659 (relating to felonious theft from interstate shipment).

### a. *Hobbs Act*

The Hobbs Act makes it illegal to obstruct, delay or affect commerce by robbery or extortion; by an attempt or a conspiracy to rob or extort; or by committing or threatening physical violence to a person or property in furtherance of a plan to violate the statute. *See* 18 U.S.C. § 1951(a). API fails to state a cause of action for either robbery or extortion.

The Hobbs Act defines robbery as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). The use of actual or threatened force or violence is an essential element of robbery pursuant to the Hobbs Act. *United States v. Smith,* 156 F.3d 1046, 1056 (10th Cir.1998), *cert. denied,* ── U.S. ──, 119 S.Ct. 844, 142 L.Ed.2d 699 (1999). Thus, the court in *United States v. Smith,* vacated a conviction for robbery under the Hobbs Act where there was no evidence either that the defendant brandished the guns he stole from the sporting goods store, or that he threatened the store's employees in any way. *Id.*

█ API fails to allege facts to support a claim of robbery as defined by § 1951. In fact, API's allegations contradict such a claim. API does not allege that TAG took

property from the person or in the presence of another. Nor does API allege that TAG took property by means of actual or threatened force, violence or fear. Rather, API alleges that TAG took property "under the guise of conducting a neutral body inspection of the cargo." Thus, the court concludes that the clandestine activity described by API does not constitute robbery within the meaning of the Hobbs Act.

█ Extortion is defined by the Hobbs Act as "the obtaining of personal property from another, *with his consent*, induced by wrongful use of actual or threatened force, violence or fear, or under color of right." 18 U.S.C. § 1951(b)(2) (emphasis added). A plaintiff cannot state a claim of extortion pursuant to the Hobbs Act unless it shows that it parted with property with its consent. *Camelio v. American Federation*, 137 F.3d 666, 671 (1st Cir.1998). API's Complaint expressly states that TAG removed its property "without consent and unlawfully." Thus, while API's Complaint alleges reprehensible acts, it does not allege a cause of action for extortion under the Hobbs Act.

#### b. *Section 659*

█ Section 659 prohibits theft from interstate shipments by carrier. 18 U.S.C. § 659. Only felonious violations of § 659 constitute "racketeering activity" under RICO. *See* 18 U.S.C. § 1961(1)(A). Theft under § 659 is a felony only if the amount or value of the stolen goods exceeds $1,000. Thus, while API alleges 20 specific violations of § 659, only four involve the theft of goods valued at over $1,000.

### 2. *Continuity*

Because the court concludes that API has alleged four predicate acts, that is, four felonious violations of § 659, it must next determine whether these violations constitute a pattern within the meaning of RICO. According to *Northwestern Bell*, "[t]o establish a RICO pattern it must ... be shown that the predicates themselves amount to, or that they otherwise consti-

tute a threat of, continuing racketeering activity." 492 U.S. at 240, 109 S.Ct. 2893. The *Northwestern Bell* Court explained that there are two alternative ways to satisfy the continuity prong: " 'Continuity' is both a closed and open–ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. 2893.

#### a. *Closed–Ended Continuity*

█ "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Northwestern Bell*, 492 U.S. at 241, 109 S.Ct. 2893. This formulation raises the question of how long a substantial period of time is. The Supreme Court has declined to draw a bright line of "substantiality." *Id.* at 243, 109 S.Ct. 2893. The Supreme Court did state, however, that "a few weeks or months" is not enough. *Id.* at 242, 109 S.Ct. 2893. The Ninth Circuit is in accord:

> We have found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year. A pattern of activity lasting only a few months does not reflect the "long term criminal conduct" to which RICO was intended to apply.

*Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 & n. 7 (9th Cir.1992) (collecting cases). Because the alleged predicate acts occurred over only a ten-week period of time, between February 17, 1998 and April 25, 1998, they do not constitute acts "extending over a substantial period of time." Thus, the court concludes that API has not established closed-ended continuity.

#### b. *Open–Ended Continuity*

Continuity may also be demonstrated if the predicate acts "constitute a threat of continuing racketeering activity": "past conduct that by its nature projects into the

future with a threat of repetition." *Northwestern Bell,* 492 U.S. at 240–41, 109 S.Ct. 2893. This enables a RICO plaintiff to establish a pattern in instances in which the action is brought before the racketeering activity has extended over a period long enough to constitute closed-ended continuity. "In such cases, liability depends on whether the threat of continuity is demonstrated." *Id.* at 242, 109 S.Ct. 2893.

In assessing whether a threat of continuity exists, courts have looked first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed. *See, e.g., GICC Capital Corp. v. Tech. Finance Group, Inc.,* 67 F.3d 463, 466 (2nd Cir.1995). Thus, an inherently unlawful act performed at the behest of an enterprise whose business is racketeering activity would automatically give rise to the requisite threat of continuity. *Id.* Where the nature or conduct of the enterprise does not by itself suggest that the racketeering acts will continue, a plaintiff must point to other external factors. *Id.*

■ In this case, although API alleges that "the acts of these Defendants are a continuing course of criminal conduct and racketeering," it does not identify any external factors to support this conclusion. Although API maintains that TAG has engaged in unlawful activities, TAG also engages in legitimate business activities. Thus, because neither the nature of the conduct nor the enterprise itself suggests a continuing threat, API must allege some external basis for believing that the racketeering acts will continue. API has not done so.

Moreover, the four acts that constitute the alleged pattern took place during a ten-week period. More than eight months elapsed between the last alleged predicate act and the filing of the RICO counterclaim. This is a strong indication that the alleged thefts have come to an end. If the racketeering activity has ended, API cannot show open-ended continuity. *Religious Tech. Ctr.,* 971 F.2d at 366–67.

Because the court concludes that API has not established the requisite continuity of the predicate acts, it cannot maintain a claim under RICO. Even if API had alleged sufficient continuity, its RICO claim contains additional deficiencies. Not only must a RICO plaintiff plead a pattern of racketeering activity, but it must also plead a violation of one of the prohibited RICO activities, as defined by 18 U.S.C. § 1962, and an injury to business or property by reason of such violation. *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1188 (3rd Cir.1993).

### 3. *RICO Activities*

#### a. *Section 1962(a)*

■ Section 1962(a) prohibits not the engagement in racketeering acts to conduct an enterprise affecting interstate commerce, but rather the use or investment of the proceeds of racketeering acts to acquire, establish or operate such an enterprise.[2] *United States v. Robertson,* 73 F.3d 249, 251 (9th Cir.1996). Therefore, a § 1962(a) claim must include allegations of injury from the use and investment of racketeering proceeds, not merely injury from the predicate acts of racketeering themselves. *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.,* 981 F.2d 429, 437 (9th Cir.1992), *cert. denied,* 508 U.S. 908, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993). API alleges only that "[m]oneys derived from TAG's unlawful conduct

---

2. Section 1962(a) provides, in relevant part:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of [18 U.S.C. § 2], to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

has [sic] been received by Sea–Land and Matson." API's RICO Case Statement asserts further that "[b]oth Sea–Land and Matson as well as TAG receive benefits from the pattern of racketeering," and they "both receive a tangible benefit." These allegations do not describe what, if any, benefits were received, must less "the use or investment of the proceeds of racketeering acts to acquire, establish, or operate" a racketeering enterprise.[3] Thus, the court concludes that API has failed to state a § 1962(a) claim.

b. *Section 1962(b)*

■ Section 1962(b) "prohibits engaging in a racketeering activity to acquire or maintain an interest in or control of an enterprise." *Schreiber Distrib. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1398 (9th Cir.1986). Thus, it requires a specific nexus between the control of the enterprise and the racketeering activity. No such nexus has been alleged.[4]

Moreover, API's § 1962(b) claim cannot be based on the alleged predicate acts of interstate theft in violation of 18 U.S.C. § 659 because API never alleges that Sea–Land controlled TAG with respect to violations of 18 U.S.C. § 659. Instead, API simply seeks to hold Sea–Land vicariously liable for TAG's alleged conduct as Sea–Land's alleged agent. That is not sufficient to raise a RICO claim based on § 1962(b). Thus, the court concludes that API's § 1962(b) claim fails.

c. *Section 1962(c)*

■ Section 1962(c) renders unlawful the direct or indirect conducting of or participation in a RICO "enterprise's affairs through a pattern of racketeering activity" by any person employed by or associated with any enterprise engaged in interstate commerce. *United Energy Owners Comm. Inc. v. U.S. Energy Management Sys., Inc.*, 837 F.2d 356, 359 n. 5 (9th Cir.1988). This section of RICO contains strict pleading requirements:

> For the purposes of section 1962(c), RICO plaintiffs must allege a defendant—the "person" or "persons"—who is distinct from the "enterprise" whose business the defendant is conducting. Under RICO, an "enterprise" is a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit. Therefore, for purposes of a single action, a corporate defendant cannot be both the RICO person and the RICO enterprise under section 1962(c).

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1533–34 (9th Cir.1992) (citations omitted). Thus, in order to state a claim under § 1962(c), a plaintiff must allege an "enterprise" that is distinct and separate from the "person." *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984).

In this case, API has alleged that TAG is both the RICO enterprise and the RICO person. This allegation is evident in API's RICO Case Statement. Item 13 of the court's RICO case statement requires a response to the following inquiry:

> If the complaint alleges a violation of 18 U.S.C. § 1962(c), state who is employed by or associated with the alleged enterprise, and state whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).

API's response provides:

> API does not know the names or identities of the individuals employed or associated by TAG but believes that these entities are liable as person and enterprises under 1962(c).

---

**3.** API has also failed to "describe the use or the investment of [racketeering] income" as required in the second part of item 11 of the RICO case statement mandated by Local Rule 9.1. Per LR 9.2, noncompliance with LR 9.1 is an independent ground for dismissal of a RICO claim.

**4.** Notably, API failed to "describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise" as required by item 12 of the RICO case statement.

API further states that TAG conducted or participated in the racketeering activity with "certain of its employees (and others acting in concert with them)." Similarly, API alleges that "[f]urther agents of TAG and individuals employed by TAG or under TAG's control have committed predicate acts as further set forth in the section below regarding the RICO claims and are together a racketeering enterprise as defined by RICO." The inclusion of additional unidentified entities does not save API's § 1962(c) claim. Ninth Circuit law is clear that a RICO person may not be held directly liable under § 1962(c), when it and the RICO enterprise are identical. Without a proper allegation of a RICO enterprise, none of API's RICO claims can survive. *Chang v. Chen,* 80 F.3d 1293, 1301 (9th Cir.1996).

d. *Section 1962(d)*

API's failure to allege the requisite substantive elements of a RICO claim under §§ 1962(a), (b) or (c), precludes its attempt to state a RICO conspiracy cause of action under § 1962(d). *Religious Tech. Ctr. v. Wollersheim,* 971 F.2d 364, 367 n. 8 (9th Cir.1992).

## CONCLUSION

For the reasons stated above, the court GRANTS TAG/ICIB Services, Inc.'s Motion to Dismiss Atlantic Pacific International, Inc.'s and A & A Consolidators, Inc.'s RICO Claim in its First Amended Third–Party Complaint. As API has had sufficient opportunity to correct the deficiencies in its RICO claim, but has failed to do so, the RICO claim is dismissed with prejudice.

IT IS SO ORDERED.