CALIFORNIA ARCHITECTURAL
BUILDING PRODUCTS, INC.,
et al., Plaintiff/Appellants/Cross-Appellees

v.

FRANCISCAN CERAMICS, INC., et al.,
Defendants/Appellees/Cross-Appellants.

Nos. 86–5822, 86–5834 and 86–5974.

United States Court of Appeals,
Ninth Circuit.

Argued Feb. 3, 1987.

Submitted March 19, 1987.

Decided June 4, 1987.
As Amended on Denial of Rehearing
and Rehearing En Banc
July 31, 1987.

Benjamin George Williams, Los Angeles, Cal., for plaintiffs/appellants/cross-appellees.

John W. Cotton, Los Angeles, Cal., for defendants/appellees/cross-appellants.

Before SNEED, FARRIS and NOONAN, Circuit Judges.

SNEED, Circuit Judge:

Dealers in ceramic tile brought this civil action against a manufacturer under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. The district court granted summary judgment for the manufacturer on the ground that there was no pattern of racketeering. The court also denied the dealers' motion for leave to amend their First Amended Complaint with prejudice as to any claims based on RICO. Finally, the court granted $350 in sanctions against the dealers' attorney under Fed.R.Civ.P. 11. We affirm the summary judgment and the denial of leave to amend, but reverse the award of Rule 11 sanctions.

## I.

### FACTS AND PROCEEDINGS BELOW

Dealers, plaintiffs below and appellants and cross-appellees, are five businesses and six individuals that sold ceramic tile. The appellees and cross-appellants here and defendants below are a manufacturer of ceramic tile, Franciscan Ceramics, Inc. (Franciscan); its American parent, Josiah Wedgwood & Sons, Inc.; and that company's English parent, Wedgwood plc (Wedgwood).

The dealers' First Amended Complaint alleges that Franciscan fraudulently assured them that it would continue in business and supply them with tile until at least the end of March 1984. It further alleges that Franciscan decided prior to May 3, 1983 that it would close in September or October 1983. In fact, Wedgwood's board of directors voted on September 22, 1983 to close Franciscan by the end of October. The dealers charge that Franciscan concealed its plan from them so that they would continue to buy tile. This enabled Franciscan to reduce inventory losses that it otherwise would have suffered had it given notice of its intentions prior to May 3, 1983.

Franciscan made the alleged misrepresentations through the United States mail or through interstate telephone calls. Therefore, the misrepresentations might be the basis of a RICO claim. 18 U.S.C. § 1961(1)(B). The dealers claim as damages the costs they incurred in stocking

and promoting Franciscan tile on the assumption that Franciscan would continue in business, as well as the profits they lost on both the tile purchased and delivered and the tile ordered but not delivered by Franciscan. Under RICO, damages are trebled. 18 U.S.C. § 1964(c).

Shortly before the discovery cutoff date, the dealers moved for permission to file a Second Amended Complaint. The proposed complaint reflected a more narrow focus than did the first. It alleged as an alternative ground for recovery that Franciscan represented that it had a plan to continue in business through March 1984, when it in fact had no such plan. Franciscan subsequently moved for summary judgment on the First Amended Complaint. Franciscan also moved for sanctions under Fed.R. Civ.P. 11. Franciscan alleged that the dealers' attorney had signed the First Amended Complaint and had persisted in prosecuting the lawsuit when a reasonable inquiry would have disclosed that the First Amended Complaint was not well grounded in fact.

At a hearing held March 4, 1986, the district court granted the motion for summary judgment, denied the motion to amend the First Amended Complaint without prejudice as to future claims not based on RICO, and granted $350 in sanctions under Fed.R.Civ.P. 11. On April 2, 1986, the dealers filed a notice of appeal from this order. On April 7, 1986, Franciscan filed a notice of cross-appeal from the award of sanctions, insisting that the sanctions were inadequate. On April 30, 1986, the district court entered a judgment conforming to its earlier order. On May 22, 1986, the dealers filed a notice of appeal from this judgment. All notices were timely under Fed.R.App.P. 4(a). This court has jurisdiction under 28 U.S.C. § 1291. The two appeals and the cross-appeal are consolidated in this action.

## II.

### PATTERN OF RACKETEERING

A. *Standard of Review for Summary Judgment*

As we regularly recite, this court reviews de novo a grant of summary judgment.

*Gabrielson v. Montgomery Ward & Co.,* 785 F.2d 762, 764 (9th Cir.1986). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if the pleadings and supporting materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party."* *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment.

B. *Summary Judgment was Appropriate*

The district court based its grant of summary judgment on the ground that the dealers had not shown a "pattern" of racketeering activity under RICO. Although we cannot agree with this conclusion, we

do hold that the dealers failed to show that there is a genuine issue of fact regarding the acts of fraud on which the RICO charge is based. Therefore summary judgment was appropriate and we affirm the district court.

### 1. RICO's "pattern" requirement.

■ Turning to the "pattern" requirement, our starting point is to recognize that a "pattern of racketeering activity" consists of at least two acts of racketeering activity. 18 U.S.C. § 1961(5). The theory of the dealers, set forth in their First Amended Complaint, is that Franciscan committed at least twenty-four separate acts of mail and wire fraud, which are acts of racketeering activity under 18 U.S.C. § 1961(1)(B), and thus constitute a "pattern."

Franciscan replies by expanding the focus of inquiry. In its view the alleged acts of mail and wire fraud do not constitute a "pattern" of racketeering activity because they pertain to a *single* alleged criminal episode, the closing of Franciscan. A "pattern," Franciscan points out, requires " 'continuity plus relationship.' " *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (quoting S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969) (emphasis added)). Continuity is lacking, Franciscan insists, when acts pertain to a single criminal episode. Under these circumstances there is no ongoing illegal activity.

■ This approach is not without its appeal. However, the plain words of RICO preclude it. RICO defines "pattern of racketeering activity" without mentioning continuity. *See* 18 U.S.C. § 1961(5). There is no suggestion that the underlying illegal acts must be part of different criminal episodes. The dictum in *Sedima* is suggestive, but without additional explication by the Supreme Court we decline to follow its lead. Nor does our recent decision in *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986), require us to do so. There we held that plaintiffs failed to state a RICO claim by alleging acts of mail and wire fraud relating to the diversion of a single shipment of products. *Id.* at 1399. That was a single fraud perpetrated on a single victim. By contrast, here the dealers allege that Franciscan made multiple fraudulent sales to them as multiple victims. Furthermore, Franciscan's alleged misrepresentations constituted continuing activity from May 1983 to September 1983—a period of five months. Therefore the dealers have alleged two or more acts of racketeering activity, and this, we hold, constitutes a "pattern."[1]

### 2. The alleged intent to defraud.

■ The elements of the alleged mail and wire fraud consist of, first, a scheme or artifice devised with specific intent to defraud and, second, use of the United States mails or interstate telephone wires in furtherance thereof. *Schreiber*, 806 F.2d at 1399–400; *see United States v. Bohonus*, 628 F.2d 1167, 1171 & n. 7 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). In the context of Franciscan's motion for summary judgment, the issue is whether there exists a genuine issue of fact with respect to whether Franciscan had an intent to defraud. The dealers allege that Franciscan has actually admitted this intent. We disagree.

1. We are aware that two circuits have held that illegal acts pertaining to a single criminal episode do not constitute a "pattern of racketeering activity." *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 154 (4th Cir.1987); *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 & n. 7 (8th Cir.1986), *cited with approval in Madden v. Gluck*, 815 F.2d 1163 (8th Cir.1987). Three other circuits have held that some acts of racketeering activity do not display the "continuity" that a pattern requires, although they have rejected a bright-line "single episode" exception. *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928–29 (10th Cir.1987), *cited with approval in Condict v. Con-*dict, 815 F.2d 579, 583–85 (10th Cir.1987); *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 30–31 (1st Cir.1987); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975–76 (7th Cir.1986), *construed in Marks v. Pannell Kerr Forster*, 811 F.2d 1108, 1110–12 (7th Cir.1987). Two circuits have interpreted "pattern of racketeering activity" broadly and literally, as we do. *United States v. Ianniello*, 808 F.2d 184, 192 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 3230, 96 L.Ed.2d —— (1987); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986).

■ The record, on the basis of which Franciscan's motion must be judged, reveals that Franciscan never misrepresented its intentions to the dealers. Until the day it closed, Franciscan operated as a going concern. Although Franciscan's management investigated closing as a contingency plan, it did not conduct the business as though closing were likely. Franciscan led the dealers to believe that it intended to stay in business, not to defraud them, but because that was its true intent. Therefore there was no fraud.[2] Franciscan's massive, unforeseen operating losses, which upset its plans and forced it to close, cannot retroactively make fraudulent an intent that was honest during the relevant period.

As Wedgwood and its subsidiaries closed their books in March 1983, management realized that Franciscan would show losses substantially exceeding projections. To correct the problem, Wedgwood appointed James Moffat to be the new chief executive officer of Franciscan. Moffat was "to try to establish whether there was a future for the operation, and if there was not, then to tidy up the position before closing down and disposing of the site as real estate, although it was felt that this ultimate step would be second best." Extracts of Minutes of a Meeting of Directors April 27, 1983, Excerpt of Record (E.R.) at 294. All of the material collected by the dealers is consistent with the fact that, between May and September 1983, Moffat tried to restore Franciscan's profitability while investigating opportunities for disposing of the real estate, should it prove necessary to close down. Although Moffat personally was convinced by August 19 that Wedgwood ought to close Franciscan, the board did not make its decision until after Wedgwood's senior operating executive made his annual visit to Franciscan in September 1983. Franciscan continued production through October to fill outstanding orders.

From May to September 1983, Franciscan invested substantially in its tile business. Franciscan continued in full production and increased its own inventory. It developed new designs and colors of tile, even some that would not be available until October 1983 or later. It hired a technical consulting firm to visit its factory and recommend improvements. And it explored possibilities for future joint marketing arrangements with other tile manufacturers.

Had Franciscan planned to close, it is unlikely that it would have undertaken these expensive projects. It is also unlikely that Franciscan would go to such lengths merely to encourage the dealers to buy more tile. No economic incentive to act in that manner exists. Therefore to avoid the stigma of implausibility, the evidentiary burden of the dealers is heavy. "[I]f the claim is one that simply makes no economic sense—[the parties opposing summary judgment] must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 106 S.Ct. at 1356. We conclude that the dealers have failed to carry this burden.

Our conclusion is not shaken by those portions of the record on which the dealers particularly rely. First, there is no direct evidence—no "smoking gun." The dealers' depositions reveal that they have no factual basis, apart from discussions with their counsel, for alleging that Franciscan had a preconceived plan to close, far less a plan to dump inventory. E.R. at 506–07 (Larry Ed Bedrosian), 537 (Henry C. Croom), 577–78 (Charles T. Nelson), 584–85 (Vincent Pompo), 590–91 (Richard Thomas Sokol), 601–02 (H.M.M. "Dick" van Gilse). Second, the indirect evidence is weak. The dealers claim that Franciscan made representations that were inconsistent with its decision to close in September 1983. These represen-

---

**2.** This explanation also accounts for Moffat's statement that there was no "potential closure" of the factory on June 30, 1983. While closure was then possible, as it is to some degree for any business, Moffat was not then persuaded that closure was inevitable or desirable. Certainly, Moffat operated Franciscan as though there was no "potential closure." Therefore Moffat's statement does not undermine his credibility or contradict other documents. We reject the dealers' suggestion that Moffat's credibility can be the basis for denying summary judgment. *See* Excerpt of Record (E.R.) at 843–46.

tations had as their source either routine business correspondence, individual assurances, or failures to disclose. We now examine each of these sources.

### a. *Routine business correspondence*

The dealers purport to find a promise by Franciscan to stay in business in a letter describing its volume discount pricing plan, E.R. at 12–13 (First Amended Complaint ¶ 22), in a letter announcing a reduced price for a line of tile, E.R. at 13 (First Amended Complaint ¶ 24), and in its agreements with dealers to supply in the future certain quantities of tile at specified prices, E.R. at 13–20 (First Amended Complaint ¶¶ 25–34). The dealers confuse these contingent statements of intent with binding commitments. For example, Franciscan said its volume discount pricing plan would expire March 31, 1984, the date the term of its fiscal year and business plan ends. This is merely a representation that volume discounts probably would not change before then. It is not a promise that Franciscan would remain in business at all costs until then. Nor did Franciscan's promise that, after August 1, it would fill orders for a certain line of tile more quickly and at a lower price constitute a promise to stay in business indefinitely. A promise to sell at a specific price in the future is not a promise to remain in business long enough to sell at that price. To assure that, a prudent businessman would enter into a contract providing for future delivery of specific goods at the agreed price.

Franciscan's routine business correspondence reveals that it made a sincere and energetic effort to improve sales and become profitable. It never explicitly promised to stay in business until a certain date. We are convinced that no reasonable trier of fact could infer a scheme to defraud from this evidence.

### b. *Individual assurances*

The dealers, in support of their motion opposing summary judgment, point to their declarations describing how officers of Franciscan reassured them when they doubted Franciscan's viability. E.R. at 1027–106. They describe how, early in 1983, officers of Franciscan said that Franciscan was "here to stay" or made similar general assurances. These representations of their intentions were not false. Franciscan had not yet seriously considered closing, and it in fact remained in business six to nine months longer.

The dealers also declare that, in July and August 1983, the executive Vice President of Franciscan, Ira Shore, told them that he had six, twelve, or eighteen months "to turn the business around." E.R. at 1029 (Richard Sokol), 1043 (Vincent Pompo), 1057 (J. Timothy Nelligan), 1078 (Bob Steffler), 1099 (Larry Bedrosian). Shore's deposition confirms that, in early August, he visited several dealers to promote sales and mentioned the six-month time frame. Shore based his statement on a July conversation with Moffat. He told Moffat that he needed six months to improve significantly sales to distributors. Moffat wanted faster results, but accepted Shore's timetable. E.R. at 961–76.

No promise by Moffat was made to keep Franciscan open six months while Shore tried to improve sales. Nor did Shore understand Moffat to have made such a promise. By mentioning the six-month period to the dealers, Shore sought to emphasize the urgency of Franciscan's appeal to them to buy more. They did not respond. When Shore first made his six-month projection, sales had fallen 36% short of the business plan for June. E.R. at 342. Sales fell 43% short of plan in July, and 37% short of plan in August. E.R. at 346, 463. Franciscan could see the handwriting on the wall. It did not have to wait another four months to recognize the inevitable. Sales were not to improve.

No reasonable trier of fact could infer fraud from Shore's statements. In context, Shore merely fixed a target date before which, to avoid serious trouble, sales would have to improve. Only an incorrigible optimist could understand that as either a promise to remain open without regard to sales or as a representation of sound economic health.

### c. *Nondisclosure*

The dealers suggest that Franciscan ought to have told them that it was investigating a contingent plan to close down. *E.g.*, E.R. at 1883–86. We disagree.

█ Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme. *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). No such duty existed and, hence, no fraud.

## III.

### DEALERS' MOTION FOR LEAVE TO AMEND

#### A. *Standard of Review*

█ This court reviews for an abuse of discretion the district court's denial of leave to amend after a responsive pleading has been filed. *Gabrielson*, 785 F.2d at 765. Unless this court has a definite and firm conviction that the district court committed a clear error of judgment, it will not disturb the district court's decision. *Chism v. National Heritage Life Ins. Co.*, 637 F.2d 1328, 1331 (9th Cir.1981). When exercising its discretion, however, the district court must heed Fed.R.Civ.P. 15(a), which says that leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility. *Id.*

#### B. *Analysis*

█ It is on "futility" that we rest our decision. The proposed Second Amended Complaint adds, as an alternative theory of recovery, allegations that Franciscan actively considered closing while it represented to the dealers that it intended to remain open. Like the First Amended Complaint, the proposed complaint requires the dealers to prove that Franciscan represented that it would remain open. We can add nothing to our explanation why no reasonable trier of fact could conclude that Franciscan's statements had this force. It follows that the dealers cannot show that there is a genuine issue of fact regarding Franciscan's alleged scheme to defraud. Denial of leave to amend was well within the district court's discretion. *Gabrielson*, 785 F.2d at 766; *see Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983).

## IV.

### SANCTIONS UNDER FED.R.CIV.P. 11

#### A. *Standard of Review*

This court reviews de novo the district court's legal conclusion that the conduct of the dealers' attorney, Benjamin Williams, violated Fed.R.Civ.P. 11. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir.1986).

#### B. *Analysis*

█ We reverse the award of sanctions against Williams. Franciscan charges that Williams signed the First Amended Complaint and persisted in prosecuting the lawsuit when a reasonable inquiry would have disclosed that the First Amended Complaint was not well grounded in fact. Although Williams ultimately failed to adduce substantial support for the complaint, the suit was not so baseless that sanctions ought to be imposed. Franciscan's sudden closing was circumstantial evidence, however weak, of a possible earlier undisclosed plan to close. The dealers say they would have bought less inventory from Franciscan if they had known of its impending closure, so dissimulation might have been in Franciscan's interest. While these facts do not suffice to create a genuine issue for trial, we cannot say that the complaint is so lacking in plausibility as to make Williams' decision to sign and certify it subject to sanctions under Fed.R.Civ.P. 11.

AFFIRMED in part; REVERSED in part.