The **WINDSWEPT CORPORATION, a Washington corporation; and Spider Staging Corporation, a Washington corporation, Plaintiffs,**

v.

**Bud FISHER and Marge Fisher, his wife, and the marital community composed thereof, et al., Defendants.**

No. C87–387D.

United States District Court, W.D. Washington, Seattle Division.

March 31, 1988.

Paul D. Carey, Betts Paterson & Mines, Seattle, Wash., for plaintiffs.

M. Margaret McKeown, Perkins Coie, Seattle, Wash., for defendant Fisher.

J.E. Thonn, Reed, McClure, Moceri, Thonn & Moriarty, Seattle, Wash., for defendants Fred S. James & Co. and Mauseth.

## MEMORANDUM AND ORDER

DIMMICK, District Judge.

This case involves the application of RICO's "pattern requirement" to a classic securities action involving the sale of a corporation.

This matter is before the Court on the Fisher [1] defendants' motion to dismiss all claims, except the Federal Securities claim, pursuant to Fed.R.Civ.P. 12(b).[2] Jurisdiction is conferred pursuant to § 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10b–5 promulgated thereunder, 17 CFR § 240.10b–5 (1987). This Court heard oral argument and has reviewed the material submitted in support of and in opposition to the motion and the record as a whole. On this basis, the Court grants defendants' motion to dismiss claims brought under 18 U.S.C. § 1962 (RICO) and state law, but denies defendant Fisher's motion to dismiss claims against Ruth Fisher and the marital community of Seth and Ruth Fisher.

## I. SUMMARY OF FACTS

This lawsuit arises out of misrepresentations or omissions allegedly made in connection with the sale of Spider Staging Corporation ("Spider Staging") to Windswept Corporation ("Windswept").

### A. *Spider Staging Corporation*

In the mid–1930's, Harry P. Fisher invented a self-powered, portable scaffolding or "staging" for use by his painting company. In 1947, two of his sons, Bud and Sid Fisher formed Spider Staging Corporation. Prior to May 30, 1986, Bud Fisher was the president, a director, and a majority stockholder; Sid Fisher was the vice-president, a director, and a majority stockholder; and Harry Fisher was an officer and director.

Spider Staging manufactures, leases, and sells power-driven scaffolding equipment used for work platforms in the construction and maintenance of office towers, elevator shafts, bridges and similar structures.

Due to the hazardous nature of the work performed using Spider Staging's equipment, Spider Staging is often named as a defendant in personal injury and product liability suits when accidents occur. As a result, the company maintains comprehensive general liability insurance coverage. Since 1947, the Fishers relied upon Floyd Mauseth, an insurance broker and agent, for all of their insurance needs. For the years 1978 through 1984, Spider Staging's general liability coverage was provided by Mission Insurance Company and two of its subsidiaries, Holland–American Insurance Company and Mission National Insurance Company. In 1985 Spider Staging switched its general liability coverage to National Union Insurance Company.

### B. *The Sale and Purchase of Spider Staging*

Mr. W.R. Greenwood (who later formed Windswept) first heard about Spider Staging when he met Harry Fisher on an airplane in late July or August of 1985. Mr. Greenwood indicated an interest in exploring the possibility of an acquisition. Mr. Fisher and Mr. Greenwood met various times (in person and by telephone) in August and September of 1985 to further discuss a possible acquisition of Spider.

Harry Fisher and Mr. Greenwood met again in November of 1985 to discuss at length the long-term business potential of Spider Staging. Harry Fisher provided Mr. Greenwood with financial data as well as his own estimates of the path Spider Staging would take under new management. Mr. Greenwood then formed Windswept.

---

**1.** Defendants Bud, Sid and Harry Fisher, together with their marital communities, have brought this motion. Defendants Fred S. James & Company of Washington, Inc. and Floyd E. Mauseth and Barbara Mauseth have joined in the Fishers' motions, except to the extent that the Fishers' motion seeks dismissal of all claims against Ruth Fisher and the marital community of Sid and Ruth Fisher. Because the arguments put forth are the same, this Court will not differentiate between the two groups of defendants.

**2.** Both defendants and plaintiffs quote from the deposition of Floyd Mauseth in their memoranda. Neither party submitted photocopied excerpts from the deposition or affidavits attesting to the deposition's authenticity. Apparently this omission was to avoid this Court viewing the motion as one for summary judgment under Fed.R.Civ.P. 56. To maintain the integrity of this Court in applying appropriate civil rules, and because the depositions have no bearing on the issues this Court is presently asked to decide, this Court excluded this evidence from consideration.

Mr. Greenwood, as Windswept's representative, next met in January of 1986 with Bud Fisher and Sid Fisher, the majority shareholders of Spider, and commenced negotiations to acquire the stock of Spider. In February 1986, the parties signed a letter of intent agreement and on March 6, 1986, entered into a Stock Purchase Agreement (the "Agreement").

Pursuant to the Agreement, the Fishers were required to make extensive disclosure regarding all contingent claims, litigation, and insurance coverage. Defendants did provide to plaintiffs, pursuant to the Agreement, various listings and descriptions of all outstanding claims against Spider Staging.

The Agreement specifically recites that all insurance policies covering Spider Staging are listed in Schedule 12 thereto. Schedule 12 lists only the liability insurance carriers for Spider Staging for the years 1985 and 1986 and makes no mention whatsoever of Mission Insurance Company or any affiliate or subsidiary thereof.

Windswept formed a negotiating team which met, several times and at length (in person and by telephone) prior to closing of the Stock Purchase Agreement, with Mr. Zaremski and with Floyd E. Mauseth and other representatives of Fred S. James. The purpose of the meetings was to analyze each lawsuit and claim pending against Spider Staging in terms of the liability insurance coverage believed to be available for the defense of those claims and for any judgments or settlements.

The Windswept negotiating team also desired to increase the limits on liability insurance coverage for Spider Staging for the year 1986. The desired increase was arranged through Floyd E. Mauseth and Fred S. James & Company prior to closing.

On or about April 15, 1986, Floyd E. Mauseth met with representatives of Windswept for the purpose of discussing Spider Staging's insurance affairs. On or about April 23, 1986, Windswept appointed Fred S. James and Floyd E. Mauseth as its insurance agent/consultant in connection with Windswept's acquisition of Spider Staging. At no time from April 15, 1986 until May 30, 1986, the date of closing, did Floyd E. Mauseth or any representative of Fred S. James advise anyone from Windswept of the financial instability of the Mission group of insurance companies.

Mission's insolvency left Windswept, as purchaser of Spider Staging, exposed to personal injury claims. This action arises out of the defendants' failure to disclose the financial instability of Mission to Windswept.

### C. *Mission Insurance Company*

Mission Insurance Company ("Mission") [3] was placed under conservatorship by order of the Superior Court of Los Angeles County, California, on October 31, 1985. In February 1986, the California Insurance Commission and Mission announced that a rehabilitation plan had been agreed upon for Mission. This plan was approved by the Superior Court of Los Angeles County, California, on March 6, 1986, just prior to Windswept's purchase of Spider Staging. Attempts at reorganization failed, however, and on February 24, 1987, the Superior Court of Los Angeles County, California, ordered the liquidation of Mission and its four subsidiaries.

## II. DISCUSSION

### A. *Motion to Dismiss Standard*

A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief.

*United States Energy Owners Committee, Inc. v. United States Energy Management Systems*, 837 F.2d 356, 360 (9th Cir.1988) (citations omitted). All material allegations must be construed in the light most favorable to the plaintiffs. *Id.*

---

**3.** Mission and its four subsidiaries, Mission Reinsurance Company, Enterprise Insurance Company, Mission National Insurance Company, and Holland–American Insurance Company, comprised a large, Los Angeles–based insurance group.

## B. *RICO Claims*

Plaintiffs allege that the defendants are liable for violations of the Federal Racketeering Influenced and Corrupt Organizations Act (RICO) §§ 1962(c)[4] and 1962(d).[5] Liability under section 1962(c) requires proof of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* RICO § 1962(d) prohibits persons from "conspiring to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." *United States v. Carter*, 721 F.2d 1514, 1529 (11th Cir.), *cert. denied*, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984). "Racketeering activity" is any act indictable under several provisions of Title 18 of the United States Code, including the predicate acts of mail and wire fraud alleged in this case. Defendants assert that the alleged fraud in this case does not fall within the Ninth Circuit's definition of "pattern." Accordingly, the only issue for this Court to decide is whether the predicate acts constitute a "pattern of racketeering activity."

In determining what suffices to establish a pattern of racketeering activity, the Ninth Circuit relies upon the "continuity plus relationship" definition espoused by the United States Supreme Court in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (quoting S.Rep. No. 617, 91st Cong., 2d Sess. 158 (1969)).

■ The predicate acts alleged are sufficiently related when they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics...." *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. There is no question here that defendants' alleged predicate acts of mail and wire fraud were related: all were directed toward inducing Windswept to purchase Spider Staging. *See Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363 (9th Cir.1987).

■ The presence or absence of continuity among the acts is the factor that most influences this Court's decision in this case. Continuity will be found when the predicate acts are not isolated or sporadic but rather pose a threat of continuing activity. *United Energy Owners Committee, Inc. v. United States Energy Management Systems*, 837 F.2d 356, 361 (9th Cir.1988).

There are five Ninth Circuit cases in which the continuity requirement is the distinguishing factor in determining whether a pattern exists.[6] *See Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360 (9th Cir.1987) (a single, isolated, allegedly fraudulent inducement of plaintiff to enter a joint venture to exploit the rights to telecast a fight did not establish a pattern because there was no threat of continuing activity); *Jarvis v. Regan*, 833 F.2d 149 (9th Cir.1987) (allegations that legal aid organizations committed three predicate acts of mail and wire fraud in obtaining a single federal grant to defray costs of opposing a ballot initiative did not establish a pattern because there was no threat of continuing activity); *Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187 (9th Cir.1987) (the scheme posed a threat of continuing activi-

---

**4.** Section 1962(c) of 18 U.S.C. provides:
   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs *through a pattern of racketeering activity* or collection of unlawful debt.
   (Emphasis added.)

**5.** Section 1962(d) of 18 U.S.C. provides:
   It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

**6.** The court in *United Energy* did not engage in lengthy analysis of the continuity requirement. Instead, the circuit court reversed the lower court because it had "erroneously relied on the now rejected 'multiple criminal episode' theory for pleading a pattern of racketeering activity." 837 F.2d at 361. *See also Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987) (per curiam) (finding pattern to be established without discussion of a general definition of pattern).

ty because it covered up a whole series of alleged kickbacks and receipts of favors, occurred over several months, and in no way completed the criminal scheme); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir.1987) (repeated inducements to multiple victims based on false assurances established a pattern because it posed a threat of continuing activity); *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir.1986) (allegations that the defendant had fraudulently obtained a single shipment of goods to sell in violation of the plaintiff's exclusive distributing agreement did not establish a pattern because there was no threat of continuing activity).

Of the five, *Medallion* is most like the present case. In *Medallion,* plaintiff and defendant entered into a joint venture to acquire telecast rights for a professional boxing match. 833 F.2d at 1361. Plaintiff entered into this agreement based upon certain alleged false representations made by defendant, resulting in both parties losing money in the joint venture. Plaintiff filed suit, alleging that defendants' representations constituted mail and wire fraud and that these acts formed a pattern of racketeering activity rendering defendant liable under RICO.

The court rejected plaintiff's claim, finding that there was no pattern because there was no threat of continuing activity:

> This case involved but a single alleged fraud with a single victim. All of [defendant's] assertions about the number of licensing agreements it had obtained were parts of its single effort to induce [plaintiff] to form the joint venture in order to obtain the broadcast rights from promoters. In essence, [plaintiff's] alle-

gations concern a single fraudulent inducement to enter a contract. Once the joint venture had acquired the broadcast rights, the fraud, if indeed it was a fraud, was complete.

*Id.* at 1364.

Similarly, in *Schreiber,* plaintiff's RICO claim was premised on a fraudulent scheme to divert a single shipment of appliances. In upholding dismissal of the RICO claim, the court found that plaintiff had failed to allege facts establishing the "threat of continuing activity" because this was a single isolated event. *Schreiber,* 806 F.2d at 1399; *see also Jarvis,* 833 F.2d at 149 (alleged scheme to misappropriate federal funds to oppose California ballot initiative through mail and telephone communications was, at most, isolated and presented no threat of continuing activity).[7]

■ In this case, there is clearly no threat of continuing activity. Like *Medallion, Jarvis,* and *Schreiber,* this case involved a single alleged fraud (the sale of Spider Staging) with a single alleged victim (Windswept).[8] Looking at the totality of the circumstances, all of the alleged predicate acts were directed toward one goal— the completion of the sale of Spider Staging stock to a single purchaser. That sale has been closed, and any potential for fraud has ended.

If the fraud alleged here constitutes a pattern of racketeering activity, every securities case or fraud case could be pleaded as a RICO case. Although this Court is mindful of the mandate to construe RICO broadly, *see Sedima,* 473 U.S. at 497, 105 S.Ct. at 3286, this Court cannot believe that Congress intended that RICO should apply to a single, isolated transaction such as this. *See Medallion,* 833 F.2d at 1365.

---

**7.** By contrast, the cases in which the Ninth Circuit has found a threat of continuing activity adequately alleged present instances of recurring fraudulent acts with multiple victims. *See, e.g., United Energy,* 837 F.2d 356 (allegations of multiple fraudulent acts involving multiple victims over more than one year); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466 (repeated inducements to numerous plaintiffs); *Sun Savings,* 825 F.2d at 194 (series of alleged kickbacks and

receipts of favors occurring over several months).

**8.** Windswept argues that because there were several classes of stock involved in the sale of Spider Staging there were also several victims. This argument is without merit because regardless of the class of stock, the sole purchaser was Windswept. *See Medallion,* 833 F.2d at 1364. (Medallion Television Enterprises, Inc. was a "single victim.")

## C. Washington's Securities Act

■ Plaintiffs include a claim in their amended complaint for violation of the Securities Act of Washington, RCW 21.20.

RCW 21.20.430 provides, in relevant part, that a person who has purchased securities

> may sue either at law or in equity ... *upon the tender of the security, or for damages if he or she no longer owns the security.*

(Emphasis added.) In light of this statutory language, the Washington Court of Appeals has held that:

> [T]here is *no liability* for an illegal or fraudulent sale under this statute where the buyer chooses to retain the stock ...

*Garretson v. Red–Co, Inc.,* 9 Wash.App. 923, 928, 516 P.2d 1039 (1973) (emphasis added); *see also Burgess v. Premier Corp.,* 727 F.2d 826, 839 (9th Cir.1984) ("the purpose of the Washington Securities Act, RCW 21.20.430(1), is only to reimburse a purchaser for his actual out-of-pocket loss" (citing *Garretson v. Red–Co, Inc., supra* )).

In the present case, plaintiffs have failed to allege either (1) the tender of the securities back to the seller by plaintiffs or (2) that plaintiffs have otherwise disposed of the securities. Further, in their prayer for relief, plaintiffs do not seek rescission of the stock purchase transaction or damages for loss of value in disposing of the stock at a price less than its purchase price. Rather, plaintiffs have elected to retain the stock and seek damages. The Washington Securities Act, however, does not provide for such a remedy. Because plaintiffs chose to retain the stock and seek damages, their claim pursuant to the Securities Act of Washington must be dismissed.[9]

## D. Pendent State Law Claims

Plaintiffs include several state law claims in their amended complaint for consideration under pendent jurisdiction. These claims include breach of contract, breach of fiduciary duties, fraud, negligent misrepresentation, and unjust enrichment.

The exercise of this Court's pendent jurisdiction over the state law claims is a matter of discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

■ As now constituted, this action has one federal claim under 15 U.S.C. § 78j and multiple state law claims all arguably arising from the same transactional nucleus of facts. Dismissal of such state law claims is appropriate where the state law issues will predominate in terms of proof, scope of the issues raised, or comprehensiveness of the remedy sought; where there is a likelihood of jury confusion; or where retaining the pendent claims will impede the interests of judicial economy, convenience and fairness to the parties. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966); *Kehr v. Smith Barney, Harris Upham & Co.,* 736 F.2d 1283, 1287 (9th Cir.1984).

■ Several factors weigh against retention of these claims. State law issues may well predominate at trial since the state law claims significantly outnumber the federal claim. The state law claims would necessarily broaden the scope of the evidence at trial. In addition, there is a strong likelihood of jury confusion due to the increased number of determinations the jury would be called upon to make and the increased number of jury instructions the jury would have to consider. Therefore, this Court declines to exercise pendent jurisdiction over the state law claims.

## E. Claims Against Ruth Fisher and the Marital Community of Sid and Ruth Fisher

Defendants have moved to dismiss all claims against Ruth Fisher and the marital community of Sid and Ruth Fisher. They allege that because the Stock Purchase Agreement was entered into on March 6, 1986, two days before Sid and Ruth Fisher's marriage, and because they entered

---

9. Defendants move to dismiss the claim against Harry Fisher for primary liability under the Securities Act of Washington on grounds that Harry Fisher was not a seller of the securities. Because the state Securities Act claim is dismissed against all the defendants, it is not necessary to reach this issue.

into a prenuptial agreement confirming the stock's status as separate, that any obligation incurred as a result of Sid's ownership of the stock is his separate obligation, not enforceable against the community or the separate property of his wife.

Defendants fail to present any competent evidence, by way of affidavit or otherwise, that their marriage took place on March 8, 1986, and that they entered into a prenuptial agreement. This evidence is vital to the resolution of this issue. Additionally, these facts are not in the pleadings. Therefore, this issue is not proper for resolution under Fed.R.Civ.P. 12(b)(6) and the motion as to this issue is denied.

### III.  CONCLUSION

THEREFORE, this Court Orders:

1.  That defendants' motion to dismiss the seventh and eighth claims for RICO violations is GRANTED;

2.  That defendants' motion to dismiss the claim for Washington Securities Act violations is GRANTED;

3.  That defendants' motion to dismiss all state law claims is GRANTED;  and

4.  That defendants' motion to dismiss all claims against Ruth Fisher and the marital community of Sid and Ruth Fisher is DENIED.